IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)  Criminal Action No. 7:16-cr-00017<br>) |
| v. | ) |
| | ) |
| NOEL PHILLIP SOLETT | )  By:  Elizabeth K. Dillon<br>)       United States District Judge<br>) |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are two pro se motions filed by Noel Phillip Solett, seeking a reduced sentence and compassionate release. (Dkt. Nos. 409, 414.) After the first motion was filed, the court appointed the Federal Public Defender (FPD) to represent Solett and the FPD filed a notice of no additional filing in support of Solett's motion. (Dkt. Nos. 410, 411.) The government filed no response. On January 10, 2023, Solett filed his second motion for compassionate release. (Dkt. No. 414.) There have been no further filings related to his motions in the case.

For the reasons stated below, Solett's motions will be denied.

I.  BACKGROUND

Solett was one of five defendants charged in a drug distribution and sex trafficking conspiracy involving methamphetamine and heroin. Solett pled guilty to one count of conspiracy to distribute 50 grams of actual methamphetamine or 500 grams of a substance containing a detectable amount of methamphetamine, while all other counts against him were dismissed. Solett regularly bought and distributed methamphetamine and heroin to customers, namely one of his co-defendants, the leader of a prostitution ring. Solett was known to carry firearms during these deals. A search of his vehicle revealed two safes—one containing drugs

and the other containing ammunition and a handgun. On his person, Solett also had the keys to the vehicle, digital scales with white powder residue, a cellphone, and keys to the safes. The co-conspirators operated out of various Roanoke City hotels, using drugs to lure at-risk women into their prostitution scheme. They used threats of violence, actual violence, and drugs to manipulate and control the women. Solett was heavily involved in the conspiracy and was identified as the primary local distributor for methamphetamine to local users. (*See generally* Presentence Investigation Report ¶¶ 11–44, Dkt. No. 324 (describing the offense conduct).)

Solett was sentenced on March 9, 2017, to 160 months imprisonment, to run concurrently with one year of his two-year state sentence imposed on February 27, 2017, in Franklin County Circuit Court, and consecutively with the rest of the state sentence. (Dkt. No. 322.) He has served more than half of his sentence, and has a projected release date of October 2, 2026.[1]

Solett, who is 48 years old, seeks release in his first motion because of the COVID-19 pandemic. His brief motion argues that the pandemic was "unforeseeable at the time of [his] sentencing" and thus he should be eligible for a reduced sentence or home confinement. (Mot. 1, Dkt. No. 409.) He attaches to his motion two pages of medical documents from the Bureau of Prisons. The first page contains a statement that he is reported to have sickle cell trait or disease and "might be at an increased risk for severe illness from COVID-19 related to his current diagnosis." (Dkt. No. 409-2, at 2.)

In his second motion, Solett provides further detail, under oath, regarding his request for a sentence reduction under § 3582(c)(1)(A).[2] In particular, he states that he suffers from severe

---

[1] *See* https://www.bop.gov/inmateloc/ (last visited December 15, 2023).

[2] Solett also requests that the court appoint legal counsel to assist him in prosecuting his motion. Counsel was appointed, however, and declined to file a supplement. Counsel received notice and a copy of his second motion via CM/ECF and still has not filed anything in further support.

obesity, sleep apnea so severe it requires him to utilize a breathing machine every night, chronic kidney disease, a thyroid disorder, and chronic diastolic heart failure.  He also suffers from a major depressive order.  (2nd Mot. 3, Dkt. No. 414.)   He provides no medical documentation in support of any of these alleged illnesses, nor does he provide any information about what type of treatment he receives for them, other than using a breathing machine at night.

Solett's COVID-19 vaccination status is unknown.  Both when he filed his original motion and when he filed his subsequent motion, he was housed at Mendota Federal Correctional Institution (FCI) in Mendota, California.  Currently, Mendota FCI reports four COVID-19 positive inmates, out of a population of over 1100.  Nearly six hundred of those inmates are "fully inoculated."[3]

Solett's second motion also provides a copy of his request to the Warden at Mendota asking for the BOP to move for a reduction in sentence for both reasons.  The form was dated December 1, 2022, which was thirty days before Solett filed his second motion, and Solett states in his motion that he had not received a response.

## II.  ANALYSIS

### A.  Compassionate Release Under the First Step Act

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(1) provides a statutory vehicle to modify a defendant's sentence under certain circumstances.  As amended by the First Step Act and in pertinent part,[4] the statute provides that the court may not modify a term of imprisonment once it has been imposed except that:

---

[3] *See* https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited December 15, 2023).

[4] Prior to the First Step Act of 2018, only the Bureau of Prison could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i). If a court finds extraordinary and compelling reasons for release, it must then consider the 18 U.S.C. § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's sentence. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). At the time Solett filed his motions, the Commission had not yet issued "a policy statement that applies to motions filed by defendants under the recently amended § 3582(c)(1)(A)." *United States v. Burnell*, 837 F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)). Courts could nonetheless look to the commentary in U.S.S.G. § 1B1.13 for guidance. *McCoy*, 981 F.3d at 282 n.7. On November 1, 2023, amendments to the guidelines effectively moved a modified version of that commentary into the guidance itself.[5]

---

[5] In this case, the result is the same regardless of whether the court relies only on the guideline commentary in effect at the time Solett he filed his motions or uses the current amended guideline. The court analyzes his motions under the new guideline.

Based on the requirements of § 3582(c)(1)(A), Solett's motions require the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

As the movant, "[a] defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020); *see also United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting the information provided by the inmate "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release"); *United States v. Brewington*, No. 2:12CR00009-007, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019); *United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020) (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56–57 (2005) (defendant bears burden as party seeking relief absent statutory guidance to the contrary)). Additionally, compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

**B. Exhaustion**

The court begins by considering exhaustion, the threshold requirement for obtaining relief under § 3582(c)(1)(A). *United States v. Muhammad*, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and *either* fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court." *Id.* at 131. Solett's second motion

indicates that he sought relief based on his medical conditions from the Warden on December 1, 2023, and he had not yet received a response at the time he filed his motion on January 1, 2023, which was thirty days past his request. Thus, the court finds that Solett has satisfied the statute's exhaustion requirement.[6]

### C. Extraordinary and Compelling Reasons

The court must next consider whether Solett has shown "extraordinary and compelling" circumstances so as to render him eligible for a sentence reduction. As noted, Solett references a number of illness, both alone and in conjunction with the risk of COVID-19, as the grounds for relief.[7]

### 1. Medical Conditions

The United States Sentencing Commission recently amended the section of the guidelines that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. *See* U.S. Sentencing Guidelines ("U.S.S.G." or "guidelines"), §1B1.13 (Nov. 2023).

A defendant may show an extraordinary and compelling reason for a sentence reduction based on medical circumstances when he can demonstrate the following:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,

---

[6] The government has not responded to his motions and thus has not taken any position on whether Solett has exhausted.

[7] Solett also complains about the non-application of his earned time credits, addressed *infra* at Section D.

> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(A)–(C). Solett describes several ailments and conditions which are troublesome. Based on the record before the court, though, he has not alleged or shown that any of them rise to the level of "a serious physical or medical condition" or cause "a serious functional or cognitive impairment," as contemplated by the guidelines. He may be able to make that showing at some point, but he has not here. Thus, his request for a reduction based on his medical conditions will be denied without prejudice.

### 2. COVID-19

The revised sentencing guidelines also address when a defendant can demonstrate an extraordinary and compelling reason for a sentence reduction based on an outbreak of an infectious disease. A defendant must show the following:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i);

>> and (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

The fact that COVID-19 exists and that there is a possibility that someone may contract it in a prison is insufficient, in and of itself, to grant a motion for compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Rather, in the context of COVID-19,

> the threshold questions are whether [the inmate] has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See High*, 997 F.3d at 185 (explaining that arguments for compassionate release "based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19").

*United States v. Youngblood*, 858 F. App'x 96, 98 (4th Cir. 2021).

Solett cannot make the showing required by the guideline because he cannot show either that FCI Mendota is affected by an outbreak of an infectious disease, or an ongoing public health emergency is currently in effect as declared by a federal, state, or local authority. As noted, his facility currently has four open cases of COVID-19 out of more than 1100 inmates. The facility is operating at Operational Level 1, indicating that the medical isolation rate at the facility is less than two percent and that there are fewer than 100 cases per 100,000 over the last seven days.[8] In addition, on May 11, 2023, the United States Department of Health and Human Services announced the end of the public health emergency caused by the COVID-19 pandemic.[9] Thus, he has not shown an ongoing public health emergency, as required by subsection (i).

---

[8] https://www.bop.gov/coronavirus/covid19_statistics.html (last viewed December 19, 2023).

[9] https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html (last viewed December 19, 2023).

Moreover, even if Solett could show the existence of the first two conditions in subsections (i) and (ii) of the guideline, he cannot show that any increased risk to him cannot be adequately mitigated in a timely manner, given the availability of vaccines against COVID-19.

Solett's risk would be greatly diminished if he is vaccinated, but his vaccination status is unknown. *See, e.g., United States v. Gerald*, No. 5:18-CR-204-D-6, 2021 WL 5283293, at *3 (E.D.N.C. Nov. 12, 2021); *United States v. Sidhu*, Criminal Case No. 1:14-cr-00399 (RDA), 2021 WL 2894723, at *5 (E.D. Va. July 9, 2021) (noting that because defendant received the COVID-19 vaccination, defendant "faces reduced risks from the virus, further weighing against his request for compassionate release"). Moreover, a risk of infection, alone, is insufficient to show extraordinary and compelling reasons. *See, e.g., United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases and noting consensus of district courts that have ruled that receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); *United States v. Luna*, No. 7:16-CR-11-D-1, 2021 WL 5828034, at *3 (E.D.N.C. Dec. 7, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19).

In light of the COVID-19 vaccine, courts have recognized the difficulty in proving extraordinary and compelling reasons even when an inmate has a high-risk comorbidity. *See United States v. Murphy*, Case No. 4:03-cr-70134, 2021 WL 3084922, at *2 (W.D. Va. July 21, 2021) ("Because Murphy is now fully vaccinated, the Court finds that any increased risks posed by COVID-19 due to his underlying medical conditions do not constitute extraordinary and compelling circumstances."). *See e.g., United States v. Peterson*, 2021 WL 2156398, at *2 (E.D. Pa. May 27, 2021) (the defendant "suffers from hypertension, asthma, and prediabetes and he is obese and a former smoker," but "[g]iven the significant protection the [Johnson and Johnson] vaccine offers and the declining rates of COVID-19 infections in prisons, we (like many other courts) do not find that Mr. Peterson has presented extraordinary and compelling circumstances at this time.").

For the above reasons, Solett's underlying health issues, alone or when coupled with the COVID-19 pandemic, do not present an extraordinary and compelling reason for compassionate release. Because the court concludes that he has not alleged an extraordinary and compelling reason for a reduced sentence, it does not reach the 18 U.S.C. § 3553(a) factors.

**D. Failure to Allow Application of Earned Time Credits**

As noted, Solett also requests a sentence reduction on the grounds that he has earned almost one year of "earned time credits" (ETCs) since the passage of the First Step Act, but is not being permitted to apply them to reduce his sentence because of his pending detainer. (2d Mot. 4–6.) He points to the BOP's Program Statement 5410.01, issued on November 18, 2022, which prohibits inmates with unresolved pending charges and/or detainers from applying any earned FTCs to prerelease custody or release to supervision. He contends that "[t]he BOP's refusal to permit me to utilize the ETCs I've earned to reduce my sentence by one year (by

applying my ETCs toward early transfer to supervised release under 18 ZU.S.C. § 3624(g)) is an extraordinary and compelling reason that warrants a sentence reduction of at least one year." (*Id.* at 5.)

A motion to reduce sentence is not the proper vehicle to challenge the BOP's calculation of a prisoner's sentence. Instead, the prisoner bring such a challenge in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, after first fully exhausting his administrative remedies with the Bureau of Prisons. *United States v. Snead*, 664 F. App'x 270, 271 (4th Cir. 2016) ("[A] federal prisoner must challenge the calculation of his sentence via the appropriate administrative channels, and if necessary, in a habeas petition under 28 U.S.C. § 2241.") (citing *United States v. Miller*, 871 F.2d 488, 489–90 (4th Cir. 1989) (per curiam)). Indeed, courts have addressed the same or similar challenges to the same BOP program statement, but in the context of § 2241 petitions. *E.g.*, *Garcia v. Janson*, No. 8:23-CV-1619-JFA-JDA, 2023 WL 3855377, at *3 (D.S.C. May 1, 2023), *report and recommendation adopted,* No. 8:23-CV-1619-JFA-JDA, 2023 WL 3559697 (D.S.C. May 19, 2023) (addressing similar challenge in § 2241 petition); *Portillo v. Janson*, No. CV 4:23-1402-BHH-TER, 2023 WL 3559633, at *2 (D.S.C. Apr. 18, 2023), *report and recommendation adopted,* No. CV 4:23-1402-BHH, 2023 WL 3549046 (D.S.C. May 18, 2023) (same); *White v. Warden*, *Fed. Corr. Inst. - Cumberland*, No. CV DKC-22-2371, 2023 WL 4867562, at *2 (D. Md. July 31, 2023) (discussing challenge to a different portion of BOP Program Statement 5410.01 in § 2241 petition), *appeal docketed* No. 23-7116, (4th Cir. Nov. 6, 2023). If Solett wants to challenge the BOP's non-application of his ETCs, he should do so in a § 2241 petition.[10]

---

[10] The court recognizes that the exact wording of Solett's motion does not ask the court to recalculate his sentence, but to reduce his sentence because the miscalculation or misapplication by the BOP is an "extraordinary and compelling" reason warranting a reduction. This is only a matter of semantics. Solett cannot do an end-run around the requirements for filing a § 2241 petition by couching his challenge as he has.

Additionally, petitions under 28 U.S.C. § 2241 must be brought in the district in which petitioner is incarcerated. *United States v. Little*, 392 F.3d 671, 680 (4th Cir. 2004) (explaining that a § 2241 petition seeking sentencing credit must be brought in the district where the petitioner is confined). Solett is currently incarcerated at FCI Mendota, in Fresno, California, which is within the Eastern District of California. If he elects to file a § 2241 petition to raise this issue and remains incarcerated there, he should file it in that court. Because Solett must bring this challenge to his sentence under § 2241, his motion to reduce sentence will be denied without prejudice insofar as it seeks a reduction in sentence to compensate for the BOP's alleged miscalculation of his ETCs.

## III. CONCLUSION AND ORDER

Based on the foregoing, it is hereby ORDERED that Solett's motions for a reduction in sentence or for compassionate release (Dkt. Nos. 409, 414) are DENIED WITHOUT PREJUDICE. The clerk is directed to provide a copy of this memorandum opinion and order to Solett, all counsel of record, and the United States Probation Office.

Entered: December 20, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge